# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEANN O'DONOVAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10 C 5186 |
| | ) |
| WESTERN HEALTH CARE CORP., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff DeAnn O'Donovan, an Illinois citizen, has sued Western Health Care Corp. ("Western") to recover a real estate broker commission she claims she earned from the sale of two senior health care facilities in Idaho. Western, an Idaho corporation, has moved to dismiss for lack of personal jurisdiction and improper venue or alternatively to transfer the case to the District of Idaho pursuant to 28 U.S.C. § 1404(a). Western has also moved to dismiss O'Donovan's claims for failure to state a claim. For the reasons set forth below, this Court grants Western's motion to transfer the case to the District of Idaho and therefore does not consider Western's other motions.

## Factual Background

This case arises out of an alleged real estate brokerage agreement between O'Donovan and Western. In late 2008, O'Donovan contacted A. Rick Holloway ("Rick"), Western's president, via telephone to offer her real estate brokerage services regarding

four senior health care facilities that Western managed and wished to sell. In January 2009, O'Donovan traveled from Illinois to Idaho to meet with Rick and his father A. Keith Holloway ("Keith"), a Western board member. During this visit, O'Donovan viewed the four facilities, which are located in Idaho.

Upon O'Donovan's return to Illinois, she exchanged numerous telephone calls and e-mails with the Holloways. Their discussions resulted in the execution of a representation agreement dated February 24, 2009 ("the Agreement"). Under the Agreement, Senior Living Investment Brokerage, Inc. ("Senior Living") was employed as "agent" for the sale of three properties. O'Donovan, who worked for Senior Living at the time, signed the Agreement on behalf of Senior Living. O'Donovan then faxed the Agreement to Keith, who signed as the "seller" (the Agreement did not identify Western on its face). O'Donovan alleges that the Holloways represented to her that Western owned the facilities and that Keith had the authority to sign the Agreement on the behalf of Western. Western contends that Keith did not sign the Agreement on the behalf of Western.

Under the Agreement, the seller agreed to pay the agent a commission equal to three percent of the purchase price of the property. Though the Agreement expired on August 24, 2009, the agent was still entitled to a commission if, within twelve months after that, the seller sold to a buyer that the agent had negotiated with or had brought into the picture. The Agreement required the agent to provide the seller with a list of prospective buyers. Western claims that O'Donovan failed to provide the required list. The Agreement contained an Idaho choice-of-law provision.

O'Donovan alleges that she worked to secure a buyer for the facilities for a

2

period of about six months. She claims that she performed all of this work in Illinois. Specifically, O'Donovan says, she discussed the facilities via telephone, e-mail, and fax with several prospective buyers, including The Ensign Group, Inc. ("Ensign"), which is located in California. O'Donovan also says she exchanged with the Holloways numerous e-mails and telephone calls discussing offers from prospective buyers. O'Donovan contends that she received more than forty e-mails from the Holloways and had more than ten phone conferences with them. O'Donovan also says that the Holloways sent her detailed financial reports concerning the facilities, which she disseminated and explained to prospective buyers. Upon her request, the Holloways also sent her information regarding the facilities and their operations on several occasions.

Around March 24, 2009, O'Donovan left Senior Living. O'Donovan claims that Senior Living assigned her its rights and obligations under the Agreement. She alleges that she promptly notified Western of her departure from Senior Living and that Keith acknowledged this in an e-mail.

In late August 2009, Rick notified O'Donovan that Western no longer wished to sell the facilities. O'Donovan alleges that despite this, Western sold two of the facilities to Ensign in December 2009 for a total of $7.6 million. In May 2010, O'Donovan contacted the Holloways to request payment pursuant to the Agreement. Rick refused to pay O'Donovan, claiming that Western had introduced Ensign to O'Donovan and thus she had not procured the buyer, and that O'Donovan had failed to provide Western with the required list of prospective buyers under the Agreement.

In her amended complaint, O'Donovan asserts claims of breach of contract,

3

breach of good faith and fair dealing, and unjust enrichment. Western has moved to dismiss pursuant to Federal Rules of Procedure 12(b)(2), (3), and (6), or in the alternative to transfer the case to the District of Idaho pursuant to 28 U.S.C. § 1404(a).

## Discussion

The Court will begin (and end) with Western's motion to transfer. Western has moved to transfer pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under section 1404(a), the party seeking transfer bears the burden of showing that "the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

Section 1404(a) "operates on the premise[ ] that the plaintiff has properly exercised his venue privilege." *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964). Though Western has challenged the propriety of venue in this district, the Court will assume for purposes of discussion that, as O'Donovan argues, venue is proper here. The Court likewise need not address Western's challenge to personal jurisdiction, because a court need not have personal jurisdiction over a defendant to consider the propriety of transfer under section 1404(a). *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986).

In evaluating the convenience of the parties and witnesses, the Court considers "(1) the plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease of access to sources of proof, (4) the convenience of the parties, and (5) the

4

convenience of the witnesses." *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

Courts generally give significant weight to the plaintiff's choice of forum, especially when, as here, the plaintiff has chosen its home forum. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). "'[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). However, "[a] plaintiff's choice of forum is afforded less deference . . . when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1007 (N.D. Ill. 2007) (internal citation omitted). In such a case, the plaintiff's choice becomes "simply one factor among many to be considered." *Hyatt Corp. v. Pers. Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *2 (N.D. Ill. Dec. 15, 2004) (internal quotation marks omitted).

O'Donovan argues that Illinois is the situs of the material events because she performed her obligations under the contract here. In breach of contract cases, however, the situs of the material events is generally considered to be where the business decisions giving rise to the breach occurred and where the allegedly breaching party's performance was withheld, which in this case was in Idaho. *Hyatt Corp.*, 2004 WL 2931288, at *3; *Alberding Estate Admin. Trust ex rel. Moore v. Vinoy Park Hotel Co.*, No. 03 C 1250, 2003 WL 22176072, at *2 (N.D. Ill. Sept. 15, 2003).

5

This factor weighs in favor of transfer and also results in the Court giving less weight to O'Donovan's choice of her home forum.

The next factor, ease of access to sources of proof, is neutral in this case, because neither party has shown that more of the documentary evidence is found in its preferred forum. In addition, neither party has argued that undue costs or technical problems associated with document production exist in this case. "When documents are easily transferable, access to proof is a neutral factor." *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006). Thus

When determining the convenience of the parties, "the court should consider the parties' respective residences and their ability to bear the costs of litigating in a particular forum." *Allied Van Lines, Inc. v. Aaron Transfer & Storage, Inc.*, 200 F. Supp. 2d 941, 947 (N.D. Ill. 2002). "[V]enue may not be transferred simply to shift inconvenience from the defendant to the plaintiff." *N. Shore Gas Co. v. Salomon, Inc.*, 896 F. Supp. 786, 791 (N.D. Ill. 1995) (internal citation omitted). In this case, "the relative inconvenience to each party of litigating outside its home forum is the same, the tie goes to the plaintiff." *Kelco Metals, Inc. v. Morgan*, No. 09 C 4476, 2010 WL 1427583, at *2 (N.D. Ill. Apr. 5, 2010).

In assessing the convenience of the witnesses, "the court considers the number of witnesses located in each forum and the nature, quality, and importance of their testimony." *ThermaPure, Inc. v. Temp-Air, Inc.*, No. 10-cv-4724, 2010 WL 5419090, at *7 (N.D. Ill. Dec. 22, 2010) "More weight is afforded non-party witnesses than witnesses within the control of the parties, as it is presumed that party witnesses will

appear voluntarily." *First Nat'l Bank*, 447 F. Supp. 2d at 913 (not needed b/c citation was not within the quote).

In terms of party witnesses, O'Donovan is located in Illinois, and the Holloways and other employees of Western are located in Idaho. In short, there are more party witnesses located in Idaho, which weighs somewhat in favor of transfer.

In terms of non-party witnesses, O'Donovan has not identified any non-party witnesses who reside in Illinois. The only non-party witnesses that either party identifies specifically are representatives of Ensign, who reside in California. The Court agrees with Western that it would be more convenient for Ensign representatives to travel from California to Idaho than Illinois. Western also says that representatives of Idaho financial institutions and property managers located in Idaho will be required to testify. Though Western has not provided a description of their testimony, it is reasonable to infer that in a case involving how a sale of Idaho property came about and a real estate broker's involvement, property owners and financial institutions are likely to be significant non-party witnesses. In sum, the factor of convenience of the witnesses weighs significantly in favor of transfer.

In evaluating the interests of justice under section 1404(a), a court considers "the court's familiarity with the applicable law and concerns relating to the efficient administration of justice." *Amorose v. C.H. Robinson Worldwide, Inc.*, 521 F.Supp. 2d 731, 735 (N.D. Ill. 2007). Generally, in diversity actions, it is "advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey*, 796 F.2d at 221. The Agreement contains an Idaho choice-of-law provision, and it is likely

7

that an Idaho judge would be significantly more familiar with Idaho law than a judge in this District, Though contract law typically does not differ all that much from state to state, Western has asserted as a defense that O'Donnell cannot receive a broker's commission for the sale of Idaho property because she does not have a real estate broker's license. *See* Def.'s Mem. In Support of Mot. To Dismiss at 12-13. Assessment of this issue is likely to involve application of an Idaho statute governing the ability of a non-licensed broker to receive a commission. That is a matter on which a federal court sitting in Idaho is likely to be far more familiar than a judge in Illinois. This factor weighs in favor of transfer.

Western cites statistics that compare the number of cases filed, pending, and the speed at which cases go to trial in the two districts in question. There are some fairly marked differences that arguably tilt in favor of transfer. That said, the weight given this particular factor is not all that significant, because general statistics like those Western cites "consist of averages for cases of all types and tell the reader nothing about cases of the particular type at issue." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F.Supp. 2d 836, 841 (N.D. Ill. 2009).

All things considered, Western has shown that the District of Idaho is a "clearly more convenient" forum than this District. The material events occurred there; the significant non-party witnesses are in Idaho or near Idaho; and there may be significant issues regarding the application of an Idaho statute. For these and the other reasons cited above, the Court concludes that transfer is appropriate.

**Conclusion**

For the reasons stated above, the Court grants the defendant's motion to transfer [docket no. 13]. The Clerk is directed to transmit the records and files of this case to the District of Idaho. The Court terminates as moot defendant's motion to dismiss.

                                                MATTHEW F. KENNELLY
                                                United States District Judge

Date: March 4, 2011